IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ARTHUR SIMONI, on his own behalf and
on behalf of all others similarly situated,

        Plaintiff,

  vs.                                                  No. CIV 00-721 LFG/KBM

UNITED STATES TOBACCO COMPANY,
UNITED STATES TOBACCO SALES AND
MARKETING COMPANY, INC., UNITED
STATES TOBACCO MANUFACTURING
COMPANY, INC., and UST, INC.,

        Defendants.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff Arthur Simoni's ("Simoni") Motion for Remand [Doc. 8]. In accord with the District's motion package rule, the motion, response, and reply were filed simultaneously on July 13, 2000. Oral argument is not necessary; the matter can be decided on the parties' submissions.

**Background**

Simoni filed suit in New Mexico state court on April 10, 2000, representing a class of all persons or entities who purchased smokeless chewing tobacco products manufactured by the defendant companies between April 1996 and March 28, 2000. (The Court will adopt the designation used in Simoni's complaint and will refer to Defendants collectively as "UST"). Simoni states in his complaint that UST manufactures, markets, and sells smokeless tobacco products, including "moist snuff," in New Mexico. He seeks damages for alleged violations of state antitrust laws and the

New Mexico Unfair Practices Act.

Simoni alleges in his complaint that UST abused its monopoly power to eliminate competitors from the moist snuff market by removing, vandalizing, and otherwise tampering with competitors' display racks and advertising, inducing retailers and distributors to stop carrying competitive products, engaging in predatory pricing, and spreading "disparaging falsehoods" to consumers about those products, including charges that a competitor's product was tainted with fiberglass. As a result, Simoni claims, competitors were eliminated from the market, thereby harming Simoni and other members of the class of indirect purchasers due to artificially inflated prices and reduction or elimination of consumer choice.

Simoni's complaint states the following causes of action: (1) violation of state antitrust laws; (2) violation of the New Mexico Unfair Practices Act; (3) common law claim for unjust enrichment; (4) common law claim for money had and received; (5) conspiracy among the several defendants to deceive the class members "as to the true nature of their illegal practices"; and (6) fraudulent concealment of "the truth about charging artificially inflated prices." Simoni asks that the court certify a class of New Mexico indirect cigarette purchasers and award compensatory damages to each individual class member, treble damages under the Unfair Practices Act, and restitution to class members in the amount by which UST has been unjustly enriched. The complaint also asks for attorneys' fees.

UST filed a timely notice of removal, asserting that complete diversity exists among the parties and that the jurisdictional amount has been met. Simoni moved to remand the case to state court, conceding complete diversity but arguing that the amount in controversy is less than the $75,000 required for federal jurisdiction under 28 U.S.C. § 1332(a).

**Discussion**

Effect of Supreme Court's Ruling in Abbott Laboratories.

Much of UST's argument in support of removal and in opposition to plaintiff's motion to remand is based on its contention that the rule of Leonhardt v. Western Sugar Co., 160 F.3d 631 (10th Cir. 1998), has been overruled by the Supreme Court. Leonhardt holds that each class member in a diversity-based class action must meet the $75,000 amount-in-controversy requirement in order for diversity jurisdiction to attach. Defendants urge this Court to reject clear Tenth Circuit precedent, based on the speculative argument that Justice O'Connor might, in a future case, provide the vote which resolves a split in the circuits on this issue. The Court declines Defendants' invitation.

Zahn v. International Paper Co., 414 U.S. 291, 94 S. Ct. 505 (1973), requires that each individual plaintiff in a diversity class action must satisfy the jurisdictional amount. Although some circuit courts disagree, the Tenth Circuit adheres to the principle that the provision for supplemental jurisdiction of 28 U.S.C. § 1367 did not overrule Zahn. Leonhardt, at 641. The Fifth Circuit holds otherwise. This term, the Supreme Court granted certiorari in a Fifth Circuit case, to decide whether § 1367 permits the exercise of diversity jurisdiction over class action claims in which at least one named plaintiff has a claim for more than $75,000, even though the other class members do not meet the jurisdictional minimum. Justice O'Connor did not participate in that case, and the Supreme Court affirmed the Fifth Circuit on a 4-4 ruling. Free v. Abbott Laboratories, Inc., 120 S. Ct. 1578 (2000). An affirmance by an equally divided Court has no precedential value and does not change the law to be applied in the Tenth Circuit.

> Under the precedents of this court, and, as seems justified by reason
> as well as by authority, an affirmance by an equally divided court is,
> as between the parties, a conclusive determination and adjudication of

3

>the matter adjudged; but the principles of law involved not having been agreed upon a majority of the court sitting prevents the case from becoming an authority for the determination of other cases, either in this or in inferior courts.

Hertz v. Woodman, 218 U.S. 205, 213-214, 30 S. Ct. 621, 623 (1910).  *See also*, United States v. Pink, 315 U.S. 203, 216, 62 S. Ct. 552, 558 (1942); United States v. Friedman, 528 F.2d 784, 788 (10th Cir. 1976), *vacated on other grounds*, 430 U.S. 925, 97 S. Ct. 1541 (1977).

>Rather than strand a case on dead center an equally divided Supreme Court, as the only sensible alternative, leaves in effect the decision of the court below, which is affirmed ex necessitate.  However, the lower court's decision does not thereby become the decision of the Supreme Court . . .  Furthermore, it is a principle of ancient lineage that an opinion by an equally divided Supreme Court has no stare decisis effect and thus no value as precedent for the reason that 'nothing is settled' by the Court.

United States ex rel. Radich v. Criminal Court of the City of New York, 459 F.2d 745, 750  (2d Cir. 1972).

Thus, this Court rejects UST's argument that the Supreme Court's *per curiam* decision "should cause the Circuit to reconsider its position," based in part on the fact that Justice O'Connor "has favored an expansive jurisdictional reading of section 1367." Rather, this Court will follow clear Tenth Circuit precedent, as it is bound to do.  Under Leonhardt, Defendants must establish that each class member in a diversity-based class action meets the $75,000 amount-in-controversy requirement.

### The Allegations of Plaintiff's Complaint are not Binding on the Court

Plaintiff concedes that complete diversity of citizenship exists in this case, and the only issue on this motion for remand is whether the amount-in-controversy requirement of 28 U.S.C. § 1332(a) has been met.  Where the allegations of the complaint do not clearly set forth an amount in controversy exceeding $75,000, the removing party has the burden of establishing the jurisdictional

4

amount. Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995). There is a strong presumption against removal jurisdiction, and all doubts are to be resolved against removal. Fajen v. Foundation Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).

In his class action complaint, Simoni includes the following in a section headed "Jurisdiction and venue":

> The total amount in controversy as to the Plaintiff and each individual member of the Proposed Class alleged herein does not exceed seventy-four thousand dollars ($74,000.00), including treble damages, interest and costs. Plaintiff and each individual Proposed Class member therefore disclaims any damages and/or restitution in excess of $74,000, including treble damages, and specifically limit their claims to $74,000 per individual Proposed Class member. Plaintiff does not seek punitive damages. Plaintiff and the Proposed Class assert no federal question and Plaintiff's state law causes of action are not federally pre-empted. Plaintiff's state law causes of action mandate that this case be heard in a State of New Mexico forum. Further, Plaintiff does not seek attorney's fees under the New Mexico Consumer Protection Act, but instead seeks fees out of a common fund award.

(Exhibit A to Notice of Removal, at ¶ 9).

It is clear that Simoni is attempting to head off federal jurisdiction by voluntarily limiting the amount in controversy to less than $75,000. He asserts that the amount claimed in the complaint must be accepted as true, so long as the claim is made in good faith. UST counters that mere allegations in the complaint cannot destroy diversity, if Defendants can otherwise meet their burden of establishing the true amount in controversy.

The Court finds UST's position the more persuasive one. The Tenth Circuit holds that the amount in controversy "is ordinarily determined by the allegations of the complaint," Laughlin, at 873; however, the circuit court also recognizes that there will be circumstances in which the

complaint is not necessarily dispositive and therefore allows the defendant to "set forth, in the notice of removal itself, the underlying facts supporting the assertion that the amount in controversy exceeds [$75,000]." Id. In addition, "[e]ven where neither party has questioned the existence of federal jurisdiction, the court has a responsibility to determine independently whether it has subject matter jurisdiction, including the required jurisdictional amount in controversy." McCabe v. McKinney, 982 F.2d 529 (Table, text in Westlaw), No. 88-2904, 1992 WL 367932, at *2 (10th Cir. Dec. 4. 1992).[1]

<u>Amount in Controversy Measured by Harm to Plaintiff</u>

Defendants contend that they can "easily establish that, if Plaintiff's claims are successful, at least one class member may recover more than $75,000" (Defendants' Response, at 2), based on the fact that the class of indirect purchasers identified by Plaintiff includes certain wholesalers and retailers which purchase significant quantities of moist snuff. However, this argument applies the wrong standard. Each class member must meet the jurisdictional amount in order to justify federal diversity jurisdiction, Leonhardt, at 641, and thus Defendants' burden is to show that no class member will recover less than $75,000. Defendants have neither attempted to establish this nor have they met their burden.

Simoni states he does not know how many members there are in the class of purchasers of

---

[1] There is a wide divergence of opinion as to the standard of proof a defendant must meet in challenging a plaintiff's allegation as to the amount in controversy. 14C Charles Alan Wright, et al., Federal Practice and Procedure § 3725 (3d ed. 1998). Defendants assert a "preponderance of the evidence" standard. The Court will apply this standard of proof, finding no published authority of the Tenth Circuit compelling it to do otherwise, and indications that courts within this circuit apply the preponderance standard. *See*, Green v. Harsco Corp., 215 F.3d 1336 (Table, text in Westlaw), No. 99-5139, 2000 WL 745353, at *3 (10th Cir. May 25, 2000); Varela v. Wal-Mart Stores, East, Inc., 86 F. Supp. 2d 1109, 1111 (D.N.M. 2000), Baldock, J., sitting by designation; Amundson & Assocs. Art Studio, Ltd. v. Nat'l Council on Compensation Ins., Inc., 977 F. Supp. 1116, 1122 (D. Kan. 1997).

smokeless tobacco products in New Mexico between April 1996 and March 28, 2000, but he estimates the number to be in the thousands or "likely" tens of thousands. Since most of the class members are individual purchasers, the Court agrees with Simoni that it is inconceivable that an individual could have accrued damages over a four-year period in excess of $75,000 in overpayments for smokeless tobacco products. In any case, there will assuredly be many members of the class who were damaged in lesser amounts. Indeed, UST does not disagree with this assertion; rather, it concentrates its argument on establishing the scope of damage to corporate purchasers, under the theory that it need show only one class member with damages in excess of $75,000. As discussed above, this is not the appropriate test for determining amount in controversy.

Amount in Controversy Measured by Cost to Defendant

    A. Cost of Complying With Injunctive Relief

Although not specifically pled in his prayer for relief, it is apparent that Simoni seeks injunctive relief in this case. In his brief in support of the motion to remand, he states, "Plaintiff requests equitable relief in the form of an injunction compelling Defendant to sell its smokeless tobacco products and [sic] competitive prices and cease the predatory pricing and other forms of unfair competition aimed at destroying competitors." (Plaintiff's Memorandum in Support of Motion to Remand, at 6).

UST asserts that, if Simoni's request for injunctive relief is granted and the Court orders Defendants to sell their products at competitive prices and cease unfair trade practices, it will cost them significantly more than $75,000 to comply, because the Court will necessarily enjoin them from "engaging in certain sales and marketing practices fundamental to Defendants' business." (Defendant's Response Brief, at 10). UST cites as an example the fact that Defendants may be forced

7

to restructure radically the way their products are marketed, and they will have to retrain their sales agents and monitor the agents' activities to ensure they are complying with the injunction. To support this assertion, UST refers to ¶¶ 35-38 of Simoni's complaint.

That portion of the complaint alleges that UST sales representatives engage in the following unfair practices: they remove competitors' products from sales racks in stores; discard and deface the racks and in-store placards directing customers to competitors' products; misrepresent to individual stores and "low-level employees" that they are required to stock UST products and to exclude competitors' products, using schematic diagrams known as "plan-o-grams; misrepresent that UST sales agents have authority to rearrange store racks so that competitors' products are inaccessible; and routinely come up with new designs for in-store display racks, thereafter discarding competitors' racks on grounds they are not consistent in appearance with the dominant UST design.

UST points to the Affidavit of Donald Segelstrom [Doc. 12], a regional vice president of United States Tobacco Sales and Marketing Company ("USTC"), one of the defendant companies, in support of its assertion that it will cost more than $75,000 to change these marketing practices. Mr. Segelstrom states:

> USTC's marketing practices include offering retailers various services such as plan-o-gram suggestions, category management recommendations and innovative merchandising racks. If Plaintiff's request to enjoin such ordinary marketing practices is granted, USTC will be forced to restructure the way that its products are marketed to retailers and consumers. In addition, any injunction requiring USTC to reset racks in every store in which its products are marketed in the state of New Mexico would cause USTC to incur substantial costs. Finally, to the extent USTC would be required to develop and maintain a distinct compliance program for New Mexico, USTC would likely incur legal and administrative cost well in excess of $75,000.

It is clear in the Tenth Circuit that the "amount in controversy" requirement can be satisfied by looking to the cost the defendant will incur in complying with injunctive relief. Ronzio v. Denver & R.G.W.R. Co., 116 F.2d 604 (10th Cir. 1940); Okla. Retail Grocers Ass'n v. Wal-Mart Stores, Inc., 605 F.2d 1155, 1159-60 (10th Cir. 1979).  However, as noted above, in a class action suit involving "separate and distinct" claims, each plaintiff in the class must be shown to satisfy the jurisdictional amount before the federal court can assume diversity jurisdiction. Zahn.  The claims of the individual class members may not be aggregated to satisfy the jurisdictional amount, where there is no joint or common interest or title in the subject matter of the suit. Snyder v. Harris, 394 U.S. 332, 89 S. Ct. 1053 (1969).

"[W]hen a number of plaintiffs are making separate claims against a single defendant . . . the court must look only to the claims of each plaintiff rather than the total detriment to the defendant." Wienberg v. General Motors Corp., No. CIV 98-771 BB/LFG, slip op. at 3 (D.N.M. Oct. 19. 1998) (Black, J.), *citing* Lonnquist v. J.C. Penney Co., 421 F.2d 597 (10th Cir. 1970).  In these circumstances, the Court can consider the total cost to the defendant only if the plaintiffs assert a common and undivided interest. Id., at 598; Harris v. Nationwide Ins. Co., 78 F. Supp. 2d 1215 (D. Utah 1999); Foster v. Microsoft Corp., No. Civ.A.00-2065-GTV, 2000 WL 714353, at *2 (D. Kan. May 2, 2000). *See also*, Justice v. Atchison, Topeka & Santa Fe Ry. Co., 927 F.2d 503 (10th Cir. 1991) (the plaintiffs' claims were "common and undivided" where the nature of the injunctive relief sought was elimination of a public nuisance by rebuilding certain structures; the benefit of such injunctive relief could not be subdivided or prorated among the plaintiffs).

In this case, factors relevant to determining whether the claims are "common and undivided" compel the Court to reject "total detriment to the defendant" as a measure of the amount in

9

controversy. Each plaintiff in the putative class of indirect purchasers of smokeless tobacco products entered into a "separate and distinct" commercial transaction with UST. Each class member holds his rights individually rather than in group status, even though the claims present common questions of law and fact as is required for class certification. Prior to the filing of this lawsuit, the plaintiffs did not possess any rights in common. Each plaintiff could have sued for redress individually without affecting the rights of the other plaintiffs. *See*, Copeland v. MBNA America, N.A., 820 F. Supp. 537, 541 (D. Colo. 1993); Girrens, Inc. v. Simon DeBartolo Group, Inc., 976 F. Supp. 1399, 1402 (D. Kan. 1997); Amundson, *supra*; and Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 54 F. Supp.2d 1042, 1051 (D. Kan. 1999):

> we must look at the nature of the right asserted, not the nature of the relief requested . . . *Plaintiffs base their claims for injunctive relief upon individual overpayments by class members*. No group right or interest forms the basis for the requested injunctive relief. Class members did not possess rights in common before they filed suit, and they could have sued individually to secure the injunctive relief which they request . . . Because class members do not have a common interest, the Court must distribute the litigation costs among them in determining the amount in controversy. [Emphasis added].

The same is true in the present case. Where, as here, plaintiffs' claims are "separate and distinct," it is improper to look to a defendant's total cost of complying with injunctive relief. Lonnquist. The Court notes again that the burden is on the party seeking removal to establish the jurisdictional amount, and all doubts are to be resolved against removal. Laughlin, at 873; Fajen, at 333. Since each class member is bringing a "separate and distinct" claim, UST cannot aggregate the claims of the individual members but must instead prove that the cost of complying with injunctive relief in this case would exceed $75,000 per class member. With a class of tens of thousands, that cost would have to exceed $750 million, at a minimum. Mr. Segelstrom's Affidavit does not include

an economic analysis of UST's compliance costs but, in any case, UST has not met its burden of demonstrating that it would cost the companies an amount even approaching $750 million to comply with an injunction ordering them to sell its smokeless tobacco products at competitive prices and "cease the predatory pricing and other forms of unfair competition."

    B.  <u>Punitive Nature of Treble Damages</u>

In addition, UST argues that the treble damages to which Simoni may be entitled under N.M.S.A. (1978) § 57-12-10(B) constitute punitive damages under New Mexico law and, since the class members have a common and undivided interest in punishing UST for its alleged conduct, punitive damages may be aggregated to meet the amount in controversy requirement.

While it is true that the New Mexico Supreme Court made the statement that treble damages under the Unfair Practices Act "is a form of punitive damages," <u>Hale v. Basin Motor Co.</u>, 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990), the Court does not agree with UST that statutory treble damages can be considered the exact equivalent of punitive damages for purposes of analyzing federal diversity jurisdiction. "[A] wooden characterization of treble damages as punitive in nature, without reference to context, does nothing to inform us whether such damages are collective and, therefore, form a single right among the plaintiffs. Clearly, they do not." <u>Peterson v. BASF Corp.</u>, 12 F. Supp. 2d 964, 973 (D. Minn. 1998). Although the treble damages provision at issue in <u>Peterson</u> is not identical to that in the New Mexico Unfair Practices Act, the Court finds persuasive the reasoning that, because treble damages "are awarded to the individual who sustained the actual damages," they are "no more part of a 'common and undivided interest' than are compensatory damages." <u>Id</u>.

Even if treble damages under the New Mexico Unfair Practices Act could be construed as ordinary punitive damages, the language of that Act nevertheless indicates that there are no separate

11

claims to aggregate in the present case, since only Mr. Simoni, as the named plaintiff, is entitled to treble damages. The Unfair Practices Act, at § 57-12-10(E), provides that, "In any class action filed under this section, the court may award damages to the named plaintiffs as provided in Subsection B of this section and may award members of the class such actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice." Thus, New Mexico's Unfair Practices Act makes a distinction between the named plaintiffs and the class members in terms of the categories of damages to which they are entitled. The treble damage provision appears in Subsection B, and thus it appears that the New Mexico legislature intended to limit treble damages to the named plaintiffs only (or as in this case, the single named plaintiff), with the rest of the class members restricted to their actual damages.

However, because the Court can find no New Mexico case law interpreting the manner in which treble damages are to be awarded in class actions under the Unfair Practices Act, it will proceed to the following alterative analysis, which assumes without deciding that each class member would be entitled to treble damages, and that such damages are the equivalent of punitive damages.

The circuits are split on the issue of whether punitive damages can be aggregated for purposes of determining the amount in controversy in a class action based on diversity. The Fifth Circuit takes the position[2] that, since punitive damages are awarded as punishment and deterrence, meant not to compensate the plaintiffs but to provide a public benefit or collective good, such damages are therefore to be considered a collective right in which plaintiff class members hold a common and undivided interest. *See,* Allen v. R & H Oil & Gas Co., 63 F.3d 1326 (5th Cir. 1995)The Eleventh

---

[2]The Fifth Circuit is not itself solidly in the pro-aggregation camp; *see*, Ard v. Transcon. Gas Pipe Line Corp., 138 F.3d 596, 601 (5th Cir. 1998) (limiting the holding in Allen as based on "the peculiar nature of punitive damages under Mississippi law").

Circuit followed this approach as well, *see*, Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996), until Tapscott was overruled on this point in Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076-77 (11th Cir. 2000).

Although the Tenth Circuit has not addressed this question, several decisions within this District reject the Allen / Tapscott approach, relying instead on a line of authority based on the leading case of Gilman v. BHC Securities, Inc., 104 F.3d 1418, 1430 (2d Cir. 1997). *See*, *e.g.*, Wienberg v General Motors Corp., *supra* (Black, J.), and cases from other districts cited therein; Evans v. E & D Partnership, No. CIV 98-1512 LH/RLP, slip op. (D.N.M. March 31, 1999) (Hansen, J.); Wilson v. Mass. Mut Life Ins. Co., No. CIV 98-1580 JP/DJS, slip op. (D.N.M. May 27, 1999) (Parker, J.); and Kollecas v. State Farm Life Ins. Co., No. CIV 99-1428 WWD/LFG, slip op. (D.N.M. Feb. 14, 2000) (Deaton, J.).

The Second Circuit in Gilman held:

> We decline to join the courts holding that punitive damages claims are by nature 'common and undivided' and therefore aggregable for jurisdictional purposes. We think that the rule in Snyder, Zahn, and other cases bars the aggregation of punitive damages claims absent a prior determination that the underlying claim – the basis on which such damages are sought – asserts a single title or right . . . It cannot be denied that Gilman and his putative class members could sue separately for punitive damages, and, whether they . . . were awarded punitive damages or not, the rights of subsequent plaintiffs would remain unaffected . . . Punitive damages claims thus cannot be deemed the type of single, indivisible res in which – under the classic 'common fund' analysis – multiple plaintiffs share a common and undivided interest that justifies aggregation. [Most internal punctuation omitted].

Relying on Gilman, Judge Black held in Wienberg, *supra*, at 5, that "[s]ince the purpose of the jurisdictional amount standard is to keep petty controversies out of federal court and keep

13

diversity jurisdiction under some modicum of control, it seems to make little sense to permit Plaintiff to enter federal court on a magic carpet of aggregated potential punitive damages." He notes also that the district courts of the Tenth Circuit have "repeatedly refused to permit class action plaintiffs to overcome the jurisdictional hurdle by aggregating punitive damages."[3] This Court finds Judge Black's analysis in Wienberg persuasive and will therefore follow his lead and that of other courts in this circuit. The claims for punitive damages in this case will not be aggregated to achieve the jurisdictional amount.

### C. Disgorgement of Unjust Enrichment

In two counts of his complaint, Simoni seeks disgorgement of "unjust enrichment" and "money had and received." UST argues that, because recovery under these counts is measured by Defendants' profits rather than by individual harms to the class members, the class has a collective right to such recovery; thus, UST contends, the claims under these counts constitute a "common and undivided interest" and should be aggregated.

This argument has appeal. However, the Court rejects it for reasons given by another court in this circuit in a similar class action case involving overpayments by individual consumers. The court in Aetna U.S. Healthcare, *supra*, noted that, "[c]lass members did not make overpayments as a group; each member made separate, distinct and individual payments" to the defendant, and each class member would recover only to the extent of his or her overpayment.

> Absent unusual circumstances, unjust enrichment remedies do not provide a generalized recovery of a fixed fund for the class. Instead, each plaintiff is entitled to the defendants' profits which resulted from the wrongdoing to that particular plaintiff. To the extent possible,

---

[3] *Citing* Girrens, Amundson, Copeland, and Asten v. Southwestern Bell Tel. Co., 914 F. Supp. 430 (D. Kan. 1996).

>disgorged funds should be apportioned among the individual claimants rather than being treated as a single collective right in which putative class members have an undivided interest . . . While the damages are admittedly based on the defendants' profits, and not the plaintiffs' harm, each recovery is an individual right and constitutes an individual interest . . . In seeking disgorgement, plaintiffs do not unite to enforce "a single title or right in which they have a common and undivided interest." [Internal punctuation omitted].

Id., at 1050-51. The Court finds the Aetna reasoning persuasive and will not aggregate the class members' claims based on unjust enrichment, and money had and received.

### Award of Attorneys' Fees

UST argues that because any attorneys' fees awarded would be paid from a fund common to all members of the class, the fees therefore constitute a "common and undivided interest" which in this case is substantial enough to satisfy the jurisdictional amount.[4] UST includes in its briefing the Affidavit of Joseph Goldberg, a New Mexico attorney with extensive experience in class action litigation involving claims of price-fixing and antitrust. Mr. Goldberg states that, if plaintiffs should prevail, it is his opinion that reasonable attorneys' fees in this case would exceed the jurisdictional amount many times over.

Even accepting the statements of the Goldberg Affidavit, this does not resolve the question whether attorneys' fees should be aggregated to reach the jurisdictional amount or whether, instead, they should be spread across the thousands or tens of thousands of class members. Simoni contends that the proper approach is to inquire whether each class member's pro rata share of attorneys' fees will exceed $75,000. Again, this issue has not been decided by the Tenth Circuit. Simoni and UST

---

[4]Although there is some mention in the complaint of disclaiming statutory attorneys' fees, the allegation is vaguely-worded, and it is apparent from his briefing that Simoni intends to claim attorneys' fees under N.M.S.A. (1973) § 57-12-10(C).

each cite authority to support their respective position on this issue. The Court finds more persuasive the reasoning of courts which decline to aggregate attorneys' fees in class action litigation for purposes of achieving diversity jurisdiction.

Simoni argues that the New Mexico Unfair Practices Act does not require that attorneys' fees under the statute be awarded solely to the named class representative. The Court agrees, but finds that a converse ruling would not assist Defendants in any case, since the claims of the remaining class members could not be brought in pursuant to supplemental jurisdiction under 28 U.S.C. § 1367, in light of Leonhardt. *See also*, Goldberg v. CPC Int'l, Inc., 678 F.2d 1365, 1367 (9th Cir. 1982); Colon v. Rent-A-Center, Inc., 13 F. Supp. 2d 553, 562 (S.D.N.Y. 1998):

> [t]o the extent that case law in this Circuit disfavors supplemental class member jurisdiction, and to the extent that the prohibition against aggregation of individual (as opposed to common) claims to meet the amount-in-controversy requirement has not been disturbed by Zahn or § 1367, it would be inconsistent to allow a class representative to meet the same threshold by aggregating the class's attorneys' fees.

The related notion that attorneys' fees should be viewed as a "common fund," thus justifying aggregation, has been rejected by a number of courts. The leading case is Goldberg v. CPC International, Inc., cited *supra*, in which the court held (at 1367):

> acceptance of . . . CPC's theories would conflict with the policy of Zahn v. International Paper Co., in which the Supreme Court reaffirmed that the 'matter in controversy' requirement must be satisfied by each member of the plaintiff class. Plaintiffs whose claims fall short cannot satisfy the requirement by aggregation of claims. CPC's theories would seriously undermine and are contrary to the rule expressed by the Supreme Court in Zahn. Thus we conclude that the potential attorneys' fees do not satisfy the jurisdictional amount for this cause of action, and that there is, therefore, no federal jurisdiction.

16

*See also*, Colon, at 562 (joining those courts "that have declined to treat prospective attorneys' fees in class actions as a bootstrap for establishing federal jurisdiction"); Crosby v. American Online, Inc., 967 F. Supp. 257, 262 (N.D. Ohio 1997) ("when based upon such separate claims, attorney's fees should not be aggregated or viewed as part of a common fund, but should be assessed on a pro rata basis"); Johnson v. Directv, Inc., 63 F. Supp. 2d 768, 770 (N.D. Tex. 1999); Gilman v. Wheat, First Securities, Inc., 896 F. Supp. 507, 511 & n.8 (D. Md. 1995) ("the total attorneys' fees must be prorated among the thousands of class plaintiffs . . . [thus,] even wild speculation in favor of defendant as to the amount of reasonable attorneys' fees would result in only minimal attorneys' fees being attributable to any individual plaintiff"); In re Cardizem CD Antitrust Litigation, 90 F. Supp. 2d 819, 834 (E.D. Mich. 1999); Lauchheimer v. Gulf Oil, 6 F. Supp. 2d 339, 345-46 (D.N.J. 1998); Aetna U.S. Healthcare, *supra*, at 1051 n.5; Amundson, *supra*, at 1125.

In Peterson v. BASF Corporation, *supra,* the court adhered to the majority view that attorneys' fees may not be aggregated, although it noted a "growing minority" of courts which allow an exception when state law attributes the entire sum of attorneys' fees to the named plaintiffs in the class action. Two of these minority cases were cited in UST's brief on this issue; as noted above, these authorities are not applicable in this case, because the New Mexico statute does not allocate the attorneys' fees exclusively to the class representatives.

The Court thus finds that the attorneys' fees must be spread over the class, and to justify federal diversity jurisdiction, each class member would have to incur fees amounting to $75,000. As noted above, with a class numbering in the thousands or "likely tens of thousands," as Simoni asserts, total attorneys' fees in this case would have to amount to $750 million in order to meet the diversity requirement. Even at the standard hourly rate of highly skilled and experienced attorneys such as Mr.

17

Goldberg (Affidavit of Joseph Goldberg, Doc. 11, at ¶ 3), this litigation is not going to produce a fee of that magnitude.

### Attorneys' Fees in Bringing This Motion

Simoni asks that the Court award him his attorneys' fees expended in bringing this motion. There is no clear Tenth Circuit authority, and no consensus among the circuits, with regard to some of UST's claims and, as was true in Amundson, *supra*, the Court finds that UST has "raised an arguable question regarding the existence of federal jurisdiction." Although attorneys' fees are allowed in the statute governing remand procedure, 28 U.S.C. § 1447(c), the Court declines to exercise its discretion to award fees in this case.

## **Order**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Remand [Doc. 8] is granted, and this case is hereby remanded to New Mexico state court.

*/s/ Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge